UNITED STATES of America,
Appellee–Cross–Appellant,

v.

Orville CEPHAS, a/k/a "Rennie", a/k/a "Bigga", Andrew White, Mark Lewin, a/k/a "Mark Lewis", Thomas, Barrett, Blythe, Ian Harris, a/k/a "Blondie", Biggs, Nigel Blythe, a/k/a "Nigel Blythe, a/k/a "Nigel Black", Diamond, Allen, Mike Taylor, a/k/a "Kinney", Defendants,

Orville Cephas, Andrew White, Mark Lewin, Ian Harris, Nigel Blythe, Michael Taylor, Defendants–Appellants, Cross–Appellees.

Nos. 1849 to 1855, Dockets 90–1318 to 90–1323 and 90–1369.

United States Court of Appeals, Second Circuit.

Argued June 3, 1991.

Decided June 28, 1991.

Paul D. Silver, Asst. U.S. Atty. N.D.N.Y. (Frederick J. Scullin, Jr., U.S. Atty. N.D. N.Y., John J. McCann, Asst. U.S. Atty., Mervyn Hamburg, Atty., Dept. of Justice, Washington, D.C., of counsel), for appellee-cross-appellant.

Oliver A. Smith, New York City, for defendant-appellant Mark Lewin.

John J. Doherty, Cohoes, N.Y., for defendant-appellant Andrew White.

Richard L. Mott, Albany, N.Y., for defendant-appellant Nigel Blythe.

Mark B. Harris, Albany, N.Y., for defendant-appellant Orville Cephas.

Roger D. Olson, Eckhaus & Olson, New York City, for defendant-appellant Ian Harris.

David J. Clegg, Kingston, N.Y., for defendant-appellant Michael Taylor.

Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

These appeals arise from the convictions of six defendants involved in a major drug and firearms operation centered in Saratoga Springs, New York. Defendant-appellants appeal from judgments of conviction entered in the United States District Court for the Northern District of New York, Con. G. Cholakis, Judge. They raise numerous issues on their appeals, all of which we have considered, but none of which merits reversal. The government cross-appeals, claiming error in the sentencing. We also find no merit in this claim. Thus, we affirm the judgments of conviction in all respects. Three of the issues warrant discussion: (1) the detainer act issues raised by Harris and Taylor, (2) the speedy trial act issue raised by Cephas, and (3) the sufficiency of the indictment and bill of particulars issues raised by Harris.

## BACKGROUND

The government filed a 31–count superseding indictment on June 28, 1988, charging twelve individuals, including the six appellants, with violations of federal drug and firearms laws. Orville Cephas

and Ian Harris were charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; all the defendants were charged with conspiracy to possess crack cocaine, cocaine powder, heroin, and marijuana with intent to distribute, in violation of 21 U.S.C. § 846; various defendants were charged with distribution of cocaine powder or crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and various defendants were charged with the use or carriage of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c).

Eight of the defendants charged in the indictment, including the six appellants, were tried jointly. The jury acquitted two of all charges filed against them. Ian Harris, Nigel Blythe, and Mark Lewin were convicted on all the charges filed against them. Orville Cephas was acquitted of one of the counts charging him with distribution of cocaine powder or crack cocaine in violation of 21 U.S.C. § 841(a)(1), but he was convicted of all the other charges brought against him. Michael Taylor was acquitted of one of the counts charging him with use or carriage of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c), but he was convicted of all the other charges brought against him. Andrew White was acquitted of two of the counts charging him with distribution of cocaine powder or crack cocaine in violation of 21 U.S.C. § 841(a)(1), but he was convicted of all the others.

## DISCUSSION

### A. *Detainer Act Issues*

Both the Interstate Agreement on Detainers Act, 18 U.S.C.App., pp. 585–620 (1985 ed.), (the "detainer act"), and the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, (the "speedy trial act"), provide time frames in which the government must bring criminal defendants to trial. The two acts contain differing time limits, use differing language, and have differing events to trigger the relevant clocks. However, both acts allow their specified time limits to be tolled—the detainer act provides a general tolling provision, *see* 18 U.S.C.App.,

Art. III & IV, while the speedy trial act enumerates specific exclusions, *see* 18 U.S.C. § 3161(h). This case raises the general question of how the two acts are to be interpreted when they are both implicated, and more specifically, whether the events that trigger tolling periods under the two statutes should be the same.

In 1970, Congress enacted the detainer act for the purpose of " 'encourag[ing] the expeditious and orderly disposition of * * * charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.' " *United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978) (quoting 18 U.S.C.App., Art. I). The act contains two central provisions: First, article III "provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer." *Mauro*, 436 U.S. at 351, 98 S.Ct. at 1842. If the prisoner requests a speedy disposition, the government must bring him to trial within 180 days. Second, article IV "provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges." *Id.* The detainer act is implicated when the prosecutor files a detainer against a prisoner. After a detainer is filed and the prosecutor, by presenting "a written request for temporary custody or availability", Art. IV(a), brings the prisoner to the receiving state for prosecution, the government must bring him to trial within 120 days. Art. IV(c).

Both these provisions, however, allow the applicable time periods to be tolled: "[F]or good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." 18 U.S.C.App., Art. III(a) & IV(c). To provide further understanding of the "for good cause shown" standard, Article VI states that "[i]n determining the duration and expiration dates of the time periods provided in articles III and IV of this

agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." 18 U.S.C.App., Art. VI.

Five years after enacting the detainer act, congress enacted the speedy trial act, 18 U.S.C. § 3161, *et seq.* The central provision of the speedy trial act requires the government to bring a defendant to trial within 70 days from the date the information or indictment is filed or from the date the defendant appears before a judicial officer, whichever date last occurs. 18 U.S.C. § 3161(c)(1). Like the detainer act, the speedy trial act was also enacted to protect the defendant's interest in obtaining a prompt disposition of charges against him. However, in addition to protecting the interests of a defendant, the purposes of the speedy trial act extend beyond those of the detainer act, and protect as well the interests of society and of the government in obtaining prompt disposition of criminal charges.

■ In enacting the speedy trial act, congress perceived strong policy reasons for requiring a defendant's trial within 70 days. Yet it also provided a series of enumerated exclusions from the 70–day calculation. 18 U.S.C. § 3161(h)(1)–(9). Congress must have deemed these exclusions sufficiently important to the administration of justice to overcome the strong interests favoring speedy dispositions. In our view, therefore, these speedy trial act exclusions were intended at least to be the equivalent of "good cause" within the meaning of the tolling provisions of the detainer act, so that if a circumstance qualifies as an exclusion under the speedy trial act, it also suffices to toll the time periods of the detainer act.

When the fourth circuit addressed the interaction between the detainer act and the speedy trial act in *United States v. Odom,* 674 F.2d 228, 231–32 (4th Cir.1982), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982), it concluded, as do we, that the two statutory schemes had the same purpose and that they should be construed together. Generally speaking we think that this approach is sound, and we agree with their conclusion.

■ Moreover, we have previously determined that Article VI of the detainer act allows exclusions of " 'all those periods of delay occasioned by the defendant.' " *United States v. Roy,* 771 F.2d 54, 59 (2d Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986) (quoting *United States v. Scheer,* 729 F.2d 164, 168 (2d Cir.1984)). This is very similar to one of the standards used to test exclusions under the speedy trial act. *See, e.g., United States v. Bufalino,* 683 F.2d 639, 646 (2d Cir.1982) (delay caused by defendant did not result in speedy trial violation), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983); *United States v. Shandell,* 800 F.2d 322, 324 (2d Cir.1986) (a speedy trial dismissal based upon delay requested by the defendant himself "would be mousetrapping of a rather egregious order"). Given the similarities in the case-law development of excludable time under the two acts, and in the interests of consistent judicial administration, we now expressly hold that the "for good cause shown" standard of the detainer act should encompass the same conditions and circumstances as the rules for excludable time under the speedy trial act.

Keeping in mind our general analysis of the detainer act above, we now turn to the more specific issues raised by Harris and Taylor. We outline the relevant procedural history of the case as it relates to the two defendants and we discuss the merits of the specific issues they raise.

■ On December 24, 1987, the government filed criminal complaints against both Harris and Taylor, and on January 6, 1988, lodged a detainer against Harris with the warden of the state prison in which he was incarcerated on unrelated charges. At that time, Harris indicated that he did not desire a speedy disposition of the charge. The district court ruled that he had thus waived his detainer act right to be tried within 180 days under article III. We agree. Article III is implicated only when, after a detainer

has been filed, the prisoner expressly asks for a speedy disposition. Art. III(a).

On March 1, 1988, the government lodged a detainer against Taylor, who was similarly incarcerated in a state prison on unrelated charges. Two days later, on March 3, Taylor indicated that he desired a speedy trial. Instead of proceeding toward trial, however, the government dismissed the charge against Taylor in April of 1988, but did not notify Taylor of the dismissal.

An indictment, which named both Harris and Taylor and which ultimately led to both their convictions, was filed on June 28, 1988. By writs of habeas corpus *ad prosequendum*, issued July 1, both Harris and Taylor were brought before the district court for arraignment on July 14.

The magistrate then issued a scheduling order which directed defense motions to be filed and served by August 11. However, on August 11, defendants, including Harris and Taylor, moved for an extension of time within which to file their pretrial motions. That day, the court orally granted the motion and extended defendants' time for filing to September 15. At the same time, the court found that the need for the extension resulted from the government's failure to meet its discovery obligations. Because the government was responsible for the delay, the court refused to exclude the extra time from the speedy trial clock. However, in the interests of justice, the court did exclude the period from September 5 to September 15. It arrived at this exclusion as follows: The government was originally required to comply with all its discovery obligations by July 28, and the defendants were to file their defense motions exactly two weeks after that date. Because the court allowed the government until August 22 to comply, the defendants should have been required to file their motions by September 5, exactly two weeks after August 22. But since the defendants were allowed until September 15, the court determined that the time from September 5 to September 15 should be excluded from speedy trial calculations in the interest of justice. *See* 18 U.S.C. § 3161(h)(8). The court, however, denied the government's

request that this period also be excluded for purposes of the detainer act.

Defendants filed their pretrial motions on September 15, and the district court held a hearing on October 7, when it ruled on some of the motions but deferred ruling on others. On December 21, the court ruled on the remaining pending motions, except for one filed by Harris that claimed error in the government's photographic identification procedure. On that motion, the court scheduled an evidentiary hearing to be held just before the trial. That evidentiary hearing took place on July 29, 1989, at which time Harris filed still another pretrial motion, and the district court did not completely resolve these matters until August 8, 1989. Trial began on the next day, August 9, 1989.

Initially, we note that because Harris did not request a speedy disposition at the time the detainer was lodged against him, he waived his right to be brought to trial within 180 days under article III. Art. III(a). Thus, Harris's detainer act rights were not triggered until July 14, when he first appeared in federal court pursuant to the writ of habeas corpus *ad prosequendum*. Thus, pursuant to article IV, Harris was entitled to be brought to trial within 120 days from July 14, subject to any applicable tolling.

The district court held that the 120–day period was also applicable to Taylor even though he had requested a speedy disposition immediately after the government had lodged the detainer against him. The court based its holding on the fact that the government had dismissed the charges underlying the detainer, and its belief that the government's failure to notify Taylor was harmless. Taylor claims that because the government never gave him notice of the dismissal of the charges underlying the detainer lodged against him, the 180–day period from the date he gave notice of his desire for a speedy disposition, on March 3, should be the applicable period. If this is the applicable period, Taylor claims that he was not timely tried. He argues that the government cannot benefit from the dismissal of the charges underlying the de-

tainer lodged against him if it never notifies the defendant that it has dismissed the charges or if it never does anything to withdraw the detainer.

■ In response, the government first argues that because the charges against Taylor, which had been the basis for the original detainer in issue, were dismissed, the detainer clock automatically stopped ticking and the 180–day period under article III disappeared. It further claims that the clock did not start again until July 14, 1988, when Taylor was made to appear before the district court pursuant to a writ of habeas corpus *ad prosequendum*, and that when the clock started again, it started an entirely new period of 120 days under article IV. We disagree with this analysis. The government cannot lodge a detainer against the defendant and then throw out the clock every time it dismisses charges, only to start the clock anew by bringing a new set of charges. As it turns out, however, it makes no difference whether Taylor's detainer rights are measured by a 180–day period from March 3 or by a 120–day period from July 14, for either way, because of the tolling provisions, Taylor was timely tried.

■ We now turn to analyzing what time periods constitute excludable time that tolled the detainer clock. First, we agree with the district court that all the time after September 15 constitutes excludable time. On this date, the defendants filed their pretrial motions, and continuously from then until the date of trial, there was a defense motion pending. Under the speedy trial act, that period was therefore excludable time, 18 U.S.C. § 3161(h)(1)(F), and given our conclusion, discussed above, that detainer act exclusions should be the same as those under the speedy trial act, the delay caused by the pending defense motions fits within the "for good cause shown" standard of the detainer act, and thus tolled the applicable time limit for both defendants.

■ We address Taylor's more specific argument that the time taken to decide Harris's motions, which was primarily responsible for the delay after September 15,

should not be attributed to Taylor under the detainer act. We reject this argument. Under the speedy trial act, we have previously held that "delay attributable to a codefendant is excludable speedy trial time as to all defendants." *United States v. Nixon,* 779 F.2d 126, 130 (2d Cir.1985). *See also United States v. Pena,* 793 F.2d 486, 489 (2d Cir.1986); *United States v. Piteo,* 726 F.2d 50, 52 (2d Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984). We see no reason to disallow exclusions for delays caused by a codefendant in the detainer act context. If we were to disallow such exclusions in detainer claims, even though we continue to allow them in speedy trial claims, it would have the practical effect of requiring severance in most cases where a defendant raises a detainer act claim. Nowhere is there any indication that congress intended to allow defendants invoking the provisions of the detainer act to be severed from their co-defendants and tried separately. For both ease of administration and logical consistency, we think the same rules for exclusions should apply to both acts.

Since the 120–day detainer act clock for both Harris and Taylor started on July 14 and since all the delay between September 15 and the day before the trial commenced was excludable time, there was no detainer act violation under article IV. On the other hand, Taylor's 180–day detainer act clock started on March 3, and even though all the delay after September 15 was excludable time, there were still 195 days—15 more than the act allowed—between March 3 and September 14. Consequently, Taylor would not have been timely tried unless at least 15 additional days between March 3 and September 14 were also excludable.

Initially, we agree with the government that the district court erred by ruling that the 11–day period from September 5 to September 15, which related to the extension of time to file defense motions requested by defendants, would be excluded for speedy trial purposes but not for detainer purposes. As we discussed above, if it was excludable time under the speedy trial act, it was similarly excludable under

the detainer act. Thus, the period of the extension, from September 5 through September 15, was excludable.

Next, we note that the speedy trial act provides that "delay resulting from *any* pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" shall be excluded. 18 U.S.C. § 3161(h)(1)(F). Thus, any time during which a motion is pending is excluded from the speedy trial clock, and consistent with our previous analysis, it should be excluded from the detainer clock as well. Under this analysis, the following periods are excludable under both acts. First, July 14 and July 15 (2 days) are excludable because of a pending government motion to detain some of the defendants. Second, June 28 through July 1 (4 days) are excludable because of a pending government motion to furnish handwriting exemplars. Although this motion was filed on May 24, the period before June 28, the day the superseding indictment naming Taylor as a defendant was returned, of course cannot be counted against Taylor. However, since the time was excludable for speedy trial purposes, it is also excludable for detainer act purposes once Taylor was added as a co-defendant. Together these two periods add up to six days, which when added to the 11–day exclusion discussed above, produce 17 excludable days under the detainer clock. Because these 17 days reduce the non-excludable time below the 180–day threshold, there was no violation of Taylor's detainer act rights under article III.

## B. *Speedy Trial Act*

Under the speedy trial act, the time excludable under § 3161(h)(1), which deals with periods of delay "resulting from other proceedings concerning the defendant", is automatically excluded for any period covered by the subsection. As the Supreme Court held in *Henderson v. United States,* 476 U.S. 321, 326–27, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986), we need not consider whether such a delay was "reasonable". *Id.* Subsequently, in *United States v. Vasquez,* 918 F.2d 329, 334–35 (2d Cir.1990), we considered specifically the question of whether the delay caused by a co-defendant's motions in a joint trial could be counted as excludable time against all the defendants, under 18 U.S.C. § 3161(h)(7). As a general rule, we determined that such a delay could be attributed to all the defendants without analyzing whether the delay was reasonable. We did hold, however, that when a defendant had made a severance motion that was denied, a court must examine the reasonableness of any delay caused by a co-defendant's motion before it can be excluded as against the complaining defendant. *Id.* at 336–37.

Relying on these principles, Cephas raises the only speedy trial issue advanced on these appeals. He claims that he made a severance motion, and that it was denied. Thus, he argues, we should inquire whether the long delay caused by co-defendant Harris's identification motion was reasonable. On that inquiry, he contends, we should determine that the delay was unreasonable and, therefore, should not be charged against him.

We disagree and reject Cephas's argument based on the government's position at oral argument. The government there pointed out that Cephas sought to be severed only from Nigel Blythe, the fugitive co-defendant, and not from co-defendant Harris. Thus, the government argues, Cephas should not be able to invoke a reasonableness requirement where he has not sought severance from the particular co-defendant responsible for the delay at issue. We agree. Therefore, we conclude that under *Vasquez* the duty to inquire into whether a delay caused by a co-defendant is reasonable is triggered only when the defendant has sought severance from the particular defendant who is responsible for the delay at issue. Here, Cephas has no claim, because he sought severance only from the fugitive co-defendant Blythe, and not from Harris whose motion caused the delay of which Cephas complains.

Our reasoning in *Vasquez* supports this holding. There we stated that the reasonableness requirement would be triggered only after the defendant had made a motion to sever. In doing so, we sought to more carefully patrol for any prejudice

**823**

caused by the joint trial after a defendant has sought to be tried separately. *Vasquez*, 918 F.2d at 337. It follows, then, that if a defendant seeks severance from only one co-defendant, heightened scrutiny as to the reasonableness of a pretrial delay is required only with respect to delays caused by that particular co-defendant.

### C. Specificity of the Indictment/Bill of Particulars

 Finally, we address Harris' claim that he was denied his due process right to notice of the charges against him, because the indictment failed to allege any overt acts attributable to him, and because the district court wrongly denied his motion for a bill of particulars describing the specific nature of the charges or acts. In particular, Harris claims that because of this lack of notice he was unfairly surprised by the testimony of Sterling Hewitt relating to three shootings in New York City and other violent activities.

Harris was charged with and convicted of engaging in a continuing criminal enterprise, a conspiracy to possess with intent to distribute and to distribute four identified controlled substances, and numerous firearms violations. He was not charged with any substantive drug offenses, and no particular overt act committed by Harris was specifically stated in the indictment or a bill of particulars.

Although it is somewhat troubling that the government did not provide Harris in advance of trial with more specific information as to particular acts which Harris himself had committed, the lack of specificity here does not justify reversing his conviction. Harris bears the heavy burden of demonstrating that the trial court abused its discretion by denying his request for a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990), *cert. denied sub nom. Cruz v. United States*, —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). " 'So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion.' " *Id.* (quoting *United States v. Maull*, 806 F.2d

1340, 1345–46 (8th Cir.1986)). In addition, the government need not particularize all of its evidence. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988).

Here, Harris was sufficiently advised as to the charges against him as well as the elements of the offenses. Although the government did not list the specific activities which showed how he furthered the criminal enterprise or the conspiracy, such specific acts need not be alleged with respect to every named defendant, if the indictment is otherwise sufficient and names the other persons involved in the criminal activity.

Further undercutting Harris's claim of unfairness at trial is his failure to ask for any continuance after hearing the government's witness, Sterling Hewitt, testify to the guns and violent activities in New York. If Harris were truly surprised by the testimony, he could have sought time to prepare his cross examination and/or answering case. That counsel *assumed* such a request would be denied is not a good enough excuse for failing to ask for it.

### CONCLUSION

The judgments of conviction of the district court for all the defendant-appellants are affirmed in all respects.