**UNITED STATES of America**

v.

**Wilson VEGA, Richard Omar Burton, Jason Mitchell, Joseph Hunter, and Elliot Ragland Defendants.**

**No. S1 03 CR 936(JGK).**

United States District Court,
S.D. New York.

March 22, 2004.

Jessica Roth, United States Attorney, Southern District New York, Criminal Division, New York City, for Plaintiff.

Winston Lee, New York City, for Defendants.

### OPINION and ORDER

KOELTL, District Judge.

The defendants were charged in a six-count superseding indictment filed on August 21, 2003. Count One charges all of the defendants with conspiracy to distribute and possess with intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of 21 U.S.C. § 846. Counts Two through Six charge each defendant with one count of distribution and possession with intent to distribute un-

specified amounts of mixtures and substances containing detectable amounts of cocaine base, in a form commonly known as "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C).

Defendants Burton, Mitchell, and Hunter have filed pretrial motions discussed below. Defendant Vega has moved to suppress certain post-arrest statements made by him, or, in the alternative, for a hearing to resolve whether the post-arrest statements were made in violation of his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A hearing has been scheduled for March 23, 2004, and that motion is not at issue in this Opinion and Order.

I

■ Defendant Burton moves to suppress videotape surveillance evidence that recorded visual non-verbal conduct occurring within the commercial space occupied by MP Wine and Liquors, which was doing business as Valentin Liquor Store in the Bronx.[1] The surveillance was authorized for two discrete thirty-day periods pursuant to orders issued by Chief Judge Mukasey and Judge Knapp on November 9, 2000 and January 18, 2001, respectively.[2] Defendant Burton argues that the surveillance evidence should be suppressed because it was obtained in violation of the Fourth Amendment.

■ The Supreme Court has held that a person seeking to invoke the protections of the Fourth Amendment must claim a "legitimate expectation of privacy" that has been invaded by Government action. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). This issue is normally resolved through two separate inquiries. The first is whether the person has exhibited through his conduct a subjective expectation that he could keep something private. *See Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The second inquiry is whether the person's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *See id.* Therefore, where a defendant invokes the Fourth Amendment's protections with respect to a particular location, the defendant "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

Defendant Burton contends that he had a subjective expectation of privacy in the liquor store. However, the evidence submitted by the defendant does not support this contention. He argues that the conduct recorded on the videotape included private conversations outside the view and earshot of other customers in the liquor store. But he does not state that he him-

1. At oral argument on the motions, the other defendants joined in defendant Burton's motion to suppress.

2. In *United States v. Biasucci*, 786 F.2d 504 (2d Cir.1986), the Court of Appeals established the standards to be met before a warrant should issue authorizing video surveillance: "(1) the judge issuing the warrant must find that 'normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous,' ...; (2) the warrant must contain 'a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates,' ...; (3) the warrant must not allow the period of interception to be 'longer than is necessary to achieve the objective of the authorization, []or in any event longer than thirty days' (though extensions are possible), ...; and (4) the warrant must require that the interception 'be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under [Title III].' " *Id.* at 510.

self participated in these conversations.[3] And, in any event, assuming that he did participate in the conversations, the defendant does not explain what measures he took to ensure that the existence of the conversations would remain private and beyond the view of other customers. The defendant also cites no case to support his position that the existence of such conversations in a public place evinces a subjective expectation of privacy in the liquor store.[4]

Even if the defendant had a subjective expectation of privacy in the liquor store, it was not a legitimate or reasonable expectation. Burton did not own the liquor store and he did not work there, facts which might otherwise support a claim to a legitimate expectation of privacy. *See United States v. Osorio,* 949 F.2d 38, 40 (2d Cir.1991) (noting that in assessing Fourth Amendment protections, "[t]he court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized.") Rather, Burton maintains that he was an innocent customer of the liquor store. However, this claim makes it more difficult for Burton to establish that he had a legitimate expectation of privacy in the liquor store. The Supreme Court has explained that commercial premises are treated differently from residential property under the Fourth Amendment because

there is less expectation of privacy in commercial premises. *See Carter,* 525 U.S. at 90, 119 S.Ct. 469. As a customer in a liquor store open to the public, the defendant was present in a public place where commercial transactions were the regular course of business—presumably buying liquor—and the defendant should have expected to be viewed by anyone who entered the store. He could not reasonably expect that his visual non-verbal conduct would remain private, and therefore he cannot claim the protections of the Fourth Amendment. *United States v. Davis,* 326 F.3d 361, 365 (2d Cir.2003) ("[W]hat a person knowingly exposes to the public ... does not receive Fourth Amendment protection."); *Rodriguez v. United States,* 878 F.Supp. 20, 24 (S.D.N.Y.1995) ("[A]s the activity monitored by the video surveillance occurred entirely within a public place, Rodriguez had no reasonable expectation of privacy on the public street.")

Indeed, in *United States v. Glisson,* No. 03 Cr. 148, 2003 WL 21709502 (S.D.N.Y. July 23, 2003), a case not cited by the defendant, Judge Batts rejected a defendant's motion to suppress videotape surveillance in the same liquor store and authorized by the same orders as in this case, because the defendant "had no privacy interests implicated by the Government's surveillance" and thus could not

---

**3.** The defendant further supports his claim that his conduct in the liquor store was intended to be private by noting that the videotape captured a woman stuffing material "down her pants." The defendant does not explain why this woman's conduct would support his own claim to a subjective expectation of privacy in the liquor store.

**4.** The only case cited by the defendant is *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz,* the Supreme Court concluded that a person who enters a telephone booth, shuts the door behind him, and pays the toll for a telephone call can

reasonably expect that the call itself will remain private. *Id.* at 352, 88 S.Ct. 507. Notably, the Court observed that where the telephone booth is made of glass, the person might not be protected from the "intruding eye," even as he remained protected from the "uninvited ear." *Id.* In this case, the defendant objects to the "intruding eye" of the videotape, not an "uninvited ear," and nothing about his alleged conduct suggests that he expected or tried to keep that conduct hidden from onlookers. In any event, for reasons explained in the text, any such expectation on the defendant's part would have been unreasonable.

"invoke the protections of the Fourth Amendment." *Id.* at *2.

Defendant Burton also challenges the validity of the orders issued by Chief Judge Mukasey and Judge Knapp authorizing the videotape surveillance. However, the Court need not assess the validity of these orders, because the defendant has failed to establish that his Fourth Amendment rights were implicated. *See Glisson,* 2003 WL 21709502, at *2 (declining to address defendant's challenge to sufficiency of orders by Chief Judge Mukasey and Judge Knapp because defendant "failed as a threshold matter to carry his burden to demonstrate that the Government violated his Fourth Amendment rights.") The motion to suppress is denied.

## II

■ Defendant Mitchell moves for a severance pursuant to Federal Rules of Criminal Procedure 8(b) or 14 so that he can be tried separately from the other defendants.

Defendant Mitchell first contends that his joinder with the other defendants is improper under Rule 8(b) because, he claims, the superseding indictment appears to charge multiple conspiracies. Under Rule 8(b), joinder of defendants is proper if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). The Court of Appeals for the Second Circuit has construed Rule 8(b) to mean that "joinder is proper where two or more persons' criminal acts are unified by substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989) (internal quotation marks and citation omitted). According to its plain language, "Rule 8(b) . . . specifically turns on what is 'alleged' against the defendants." *United States v. Gallo,* No. 98 Cr. 338, 1999 WL 9848, at *2 (S.D.N.Y. Jan. 11, 1999). It is an "established rule" that "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed.R.Crim.P. 8(b)." *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988); *see also United States v. Henry,* 861 F.Supp. 1190, 1200 n. 5 (S.D.N.Y.1994) (holding defendants were properly joined "because they are alleged to have participated in the underlying conspiracy").

In this case, the Government has alleged in Count One of the superseding indictment that the co-defendants in this case conspired "together and with each other" to violate the federal narcotics laws. This allegation is sufficient to satisfy the joinder requirements of Rule 8(b). There is nothing before the Court from which to conclude that the conspiracy charge is frivolous or that it improperly combines what should be two or more distinct conspiracies. Therefore, the defendants are properly joined pursuant to Rule 8(b), and defendant Mitchell's motion for a severance pursuant to Rule 8(b) is denied. *See United States v. Lane,* 474 U.S. 438, 447, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) ("The indictment . . . charged all the defendants with one overall count of conspiracy, making joinder under Rule 8 proper.").

■ Because the allegations in the indictment meet the requirements of Rule 8, defendant Mitchell's motion to sever is governed by Rule 14. *Lane,* 474 U.S. at 447, 106 S.Ct. 725. Severance motions are committed to the sound discretion of the district court. *See United States v. Harwood,* 998 F.2d 91, 95 (2d Cir.1993). There is a preference in the federal system for joint trials of defendants who are indicted together, because joint trials promote efficiency and avoid the problems of inconsistent verdicts. *See Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v.*

*Spinelli,* 352 F.3d 48, 55 (2d Cir.2003). Therefore, the Supreme Court has instructed that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. A defendant seeking severance must do more than demonstrate that separate trials would increase his or her chances of acquittal; rather, the defendant must show that the prejudice resulting from a joint trial would be so severe as to amount to a miscarriage of justice and the denial of a constitutionally fair trial. *See Spinelli,* 352 F.3d at 55.

■ Defendant Mitchell contends that severance is warranted because there is a possibility of prejudicial spillover from evidence that is admissible against his co-defendants but not against him. But Mitchell does not identify what this evi-dence might be. He observes that the allegation of a single conspiracy "does not necessarily mean" that evidence would be admissible against all of the defendants, and that prejudicial spillover "may" be so pervasive that it could not be cured a limiting instruction. (Mem. Supp. Def. Mitchell's Omnibus Mot. at 7.) Such speculation does not establish that a joint trial would pose a serious risk to a specific trial right of the defendant. To the extent that evidence is admissible only against other defendants, Mitchell has failed to show that proper limiting instructions would not be adequate to protect his rights. Moreover, the risk of prejudicial spillover is measurably reduced when a single conspiracy is alleged, because any evidence admitted at a joint trial of the alleged co-conspirators to prove the existence of the conspiracy and its illegal objects would also be admissible at separate trials of the defendants.[5] *See, e.g., United States v. Rosa,* 11 F.3d 315, 341 (2d Cir.1993). Therefore, defendant Mitchell's motion for a severance pursuant to Rule 14 is denied.

---

**5.** After hearing argument on the motions, the Court set September 7, 2004 as the trial date. The Court determined, pursuant to the Speedy Trial Act, that the length of the adjournment was necessary in order to accommodate the schedules of each defendant's counsel and to assure that all counsel could prepare adequately for trial, and that the ends of justice served by granting the continuance outweighed the best interest of the defendants and the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(8)(A). Defendant Mitchell's counsel requested that the Court consider the difficulty in scheduling a multi-defendant trial in deciding the motion for a severance. However, as noted in the text, the Supreme Court has instructed that severance motions should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. The adjournment of the trial to September 7, 2004 does not pose a risk of compromising one of defendant Mitchell's trial rights or of preventing the jury from arriving at a reliable judgment of guilt or innocence. If defendant Mitchell claims that the length of his pretrial detention violates his right to due process, his remedy would be an application for pretrial release, not a severance motion. *See United States v. Millan* 4 F.3d 1038, 1043 (2d Cir.1993); *see also United States v. El–Gabrowny,* No. S3 93 Cr. 181, 1994 WL 74072 (S.D.N.Y. Mar. 9, 1994) (denying defendant's severance motion and bail motion where defendant "relied in his severance motion on essentially the same arguments advanced in aid of his bail motion— principally, the projected length of his detention until the charges against him are resolved"); *United States v. Gambino,* 784 F.Supp. 129, 137–38 (S.D.N.Y.1992) (denying two defendants' motions for severance from other defendants and for immediate trials where adjournment of trial date was consistent with Speedy Trial Act).

## III

■■■ Defendants Mitchell and Hunter move for a bill of particulars pursuant to Rule 7(f). The decision whether to grant a bill of particulars pursuant to Rule 7(f) rests with the sound discretion of the district court. *See United States v. Cephas,* 937 F.2d 816, 823 (2d Cir.1991); *United States v. Panza,* 750 F.2d 1141 (2d Cir.1984); *United States v. Strawberry,* 892 F.Supp. 519, 526 (S.D.N.Y.1995). The purpose of a bill of particulars is to enable a defendant "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). A bill of particulars is required "only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990) (citation omitted); *see also Cephas,* 937 F.2d at 823; *Panza,* 750 F.2d at 1148. The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories. *See United States v. Mitlof,* 165 F.Supp.2d 558, 569 (S.D.N.Y.2001) (collecting cases). "Generally, if the information sought by the defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky,* 820 F.2d at 574; *see United States v. Barnes,* 158 F.3d 662, 665 (2d Cir.1998); *United States v. Ojeikere,* 299 F.Supp.2d 254, 260–61 (S.D.N.Y.2004).

In this case, the defendants are not entitled to a bill of particulars. The superseding indictment lays out the alleged offenses with sufficient particularity. The information in the superseding indictment has been further supplemented by ongoing discovery in this case. The superseding indictment and the other information disclosed to the defendants explain the specific acts of which the defendants are accused in sufficient detail that they can prepare for trial, avoid surprise, and interpose pleas of double jeopardy if warranted. In this light, the defendants' request for a bill of particulars is merely "an impermissible attempt to compel the Government to provide the evidentiary details of its case." *United States v. Biaggi,* 675 F.Supp. 790, 810 (S.D.N.Y.1987). The motions by defendants Mitchell and Hunter for a bill of particulars are denied.

## IV

Defendants Mitchell and Hunter move to compel the Government to comply with its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure. However, the Government represents that it has produced all of the discovery to which the defendants are entitled under Rule 16. Based on the record before the Court, there is no basis for the Court to conclude that the Government's production was incomplete, or that its representation was made in bad faith. *See United States v. Savarese,* No. 01 Cr. 1121, 2002 WL 265153, at *2 (S.D.N.Y. Feb. 22, 2002) (denying defendant's Rule 16 discovery request on grounds that "[t]he record before the Court reveals no reason to believe that the Government has not acted reasonably and in good faith"); *Ojeikere,* 299 F.Supp.2d at 259.

■■■ Defendants Mitchell and Hunter also move for disclosure of other material pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and the Jencks Act. The Government represents that it is not currently aware of any *Brady* material relating to the defendants, and that it is aware of its continuing obligation

to disclose such material as it comes to light. That representation is sufficient. *See, e.g., Ojeikere,* 299 F.Supp.2d at 258 (collecting cases). Similarly, the Government has indicated that it is aware of its obligations under *Giglio* and the Jencks Act. The Government represents that it intends to make *Giglio* and Jencks Act material available to the defense in sufficient time for its effective use at trial. These representations are sufficient. *See, e.g., Gallo,* 1999 WL 9848, at *8; *United States v. Szur,* No. S5 97 Cr. 108, 1998 WL 132942, at *15 (S.D.N.Y. Mar. 20, 1998). The defendants' motion for early disclosure of *Brady, Giglio,* and Jencks Act material is denied.

█ Some of the requests for information that have been made by defendants Mitchell and Hunter amount to a request for a witness list. A defendant is not automatically entitled as a matter of right or under the Federal Rules of Criminal Procedure to a list of the names and addresses of the Government's witnesses prior to trial. *See United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir.1990). However, it is well-established that district courts have the discretionary authority to order pretrial disclosure of the identity of the Government's witnesses. *See United States v. Cannone,* 528 F.2d 296, 300 (2d Cir.1975); *Bejasa,* 904 F.2d at 139. A defendant is entitled to disclosure of the Government's witnesses only if he makes "a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *Cannone,* 528 F.2d at 301; *see also Bejasa,* 904 F.2d at 139–40. "[A]n abstract, conclusory claim" by a defendant that such disclosure is necessary is not sufficient. *Cannone,* 528 F.2d at 301–02; *see also Ojeikere,* 299 F.Supp.2d at 258.

█ Defendants Mitchell and Hunter move for the immediate disclosure of any evidence of other crimes, wrongs, or acts that the Government might seek to introduce pursuant to Federal Rule of Evidence 404(b). The defendants seek immediate disclosure so that they can make appropriate applications to exclude such evidence. Under Rule 404(b), the Government must provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of" any evidence of other crimes, wrongs, or acts that the Government intends to introduce at trial. Fed. R.Evid. 404(b). Courts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b). *See, e.g., United States v. Heredia,* No. 02 Cr. 1246, 2003 WL 21524008, at *10 (S.D.N.Y. July 3, 2003); *United States v. Silberstein,* No. 02 Cr. 800, 2003 WL 21488024, at *7 (S.D.N.Y. June 27, 2003); *United States v. Greyling,* No. 00 Cr. 631, 2002 WL 424655, at *4 (S.D.N.Y. Mar. 18, 2002); *Ojeikere,* 299 F.Supp.2d at 257. The defendant has identified no special circumstances, other than the time needed to prepare motions to preclude such evidence, that would warrant earlier disclosure of any Rule 404(b) evidence. Indeed, the Government represents that it intends itself to make a motion in limine for admission of Rule 404(b) evidence at least two weeks before trial.

The Government shall make any motions in limine to admit Rule 404(b) evidence by **August 17, 2004.** The defendants may respond by **August 23, 2004.**

## CONCLUSION

The Court has considered all of the arguments of the parties, and to the extent they are not addressed above, they are either moot or without merit. For the reasons explained above, the pre-trial mo-

tions submitted by defendants Burton, Mitchell, and Hunter are denied.

**SO ORDERED.**