UNITED STATES of America

v.

**Artur SOLOMONYAN, Christiaan Dewet Spies, Ioseb Kharabadze, Joseph Colpani, Michael Guy DeMare, Armen Razmik Barseghyan, Spartak Vahagn Yeribekyan, Dmitriy Vorobeychik, Nikolai Nadirashvili, Levon Solomonyan, Allah McQueen, Rajab Chavis, Garegin Gasparyan, Michael Jiminez, Nieman Myles, William Jesus Thomas, Levan Chvelidze, Vakhtang Machitidze, Tigran Gevorgyan, Armand Abramian, Defendants.**

**No. 05 Cr. 327(RJH).**

United States District Court, S.D. New York.

Sept. 18, 2006.

Louis V. Fasulo, Fasulo, Shalley & Dimaggio, LLP, Seth Ginsberg, Seth Ginsberg Attorney at Law, David Wikstrom, Ira D. London, Law Office of Ira D. London, Raymond B. Grunewald, Raymond Grunewald & Associates, Winston Lee, Esq., James Michael Roth, Hurwitz Stampur & Roth, Robert Joel Krakow, Office of Robert J. Krakow, New York, NY, John M. Burke, Paul Madden, Esq., Brooklyn, NY, Arthur Louis Wallace, III, Wallace Legal, Pompano Beach, FL, for Defendants.

Benjamin M. Lawsky, Miriam Elizabeth Rocah, U.S. Attorney's Office, New York, NY, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

HOLWELL, District Judge.

### INTRODUCTION

The Indictment in this case charges twenty defendants variously in ten counts relating to trafficking in arms and firearms. Count One charges seven defendants (Artur Solomonyan, Christiaan Dewet Spies, Ioseb Kharabadze, Joseph Colpani, Michael Guy DeMare, Armen Razmik Barseghyan, and Spartak Vahagn Yeribekyan) with a conspiracy to engage in the business of brokering activities with respect to the import and sale of foreign military weapons. Count Three charges all defendants (except Kharabadze and Yeribekyan) with a conspiracy to traffic in firearms, specifically machine guns. The remaining counts charge various defendants with substantive violations that were the object of the conspiracies as well as related violations involving the illegal transport of a firearm by a felon and illegal possession of a firearm by an illegal alien. To date, defendants Michael Jiminez, William Jesus Thomas, Vakhtang Machitidze, and Tigran Gevorgyan have pled guilty; Yeribekyan remains at large; and Levon Solomonyan is not presently being prosecuted due to a disabling car accident.[1] The fourteen remaining defendants are scheduled to proceed to trial on October 30, 2006.

Pending before the Court are defendants' pretrial motions. Collectively, the motions include, but are not limited to, motions to suppress evidence, motions to

---

1. References herein to "Solomonyan" refer to defendant Artur Solomonyan.

suppress statements, motions to dismiss certain charges, demands for bills of particulars, requests for pretrial evidentiary hearings, severance motions, and motions seeking additional discovery and pretrial disclosures. Defendants' motions, with two exceptions noted below, are denied.[2]

## DISCUSSION

### 1. DEFENDANTS' MOTIONS TO SUPPRESS WIRETAP EVIDENCE

Defendants Solomonyan and Spies move to suppress all evidence derived from the court-authorized wiretaps of their cell phones. Separately, defendant Kharabadze moves to suppress all evidence obtained from the wiretap surveillance of his home phone. Additionally, defendant Solomonyan requests a *Franks* hearing to challenge the accuracy of the affidavit submitted in support of the wiretap applications regarding the cell phones.

██ Under 18 U.S.C. § 2518, a federal court may issue a wiretap order if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and (4) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap. *See* 18 U.S.C. § 2518(3)(a)-(d); *United States v. Diaz,* 176 F.3d 52, 110–11 (2d Cir.1999); *United States v. Wagner,* 989 F.2d 69, 71 (2d Cir.1993); *United States v. Ambrosio,* 898 F.Supp. 177, 181 (S.D.N.Y.1995). Defendants contend that the affidavits submitted in support of both wiretap applications failed to demonstrate probable cause to believe that crimes were being committed. In addition, defendants argue that the affidavits did not demonstrate that alternative investigative techniques had been exhausted.

#### A. *Probable Cause*

██ Probable cause to support a wiretap order exists when "facts made known to the issuing court are sufficient to warrant a prudent man in believing that evidence of a crime could be obtained through the use of electronic surveillance." *United States v. Ruggiero,* 824 F.Supp. 379, 398 (S.D.N.Y.1993); *aff'd,* 44 F.3d 1102 (2d Cir.1995). In making this determination, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that ... evidence of a crime will be found...." *Ill. v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause is not a particularly demanding standard. 'It is clear that only the probability, and not the prima facie showing, of criminal activity is the standard of probable cause.'" *United States v. Scala,* 388

---

**2.** There is a myriad of overlap and duplication in the defendants' separate motions. While not all motions are individually addressed, each has been considered by the Court and, as noted, denied. Furthermore, although this opinion may speak of a motion with relation to a particular moving party, the Court will consider all defendants to have joined in all motions that may arguably relate to them. The sole motion granted relates to Solomonyan's request that any existing agents' handwritten notes be preserved. *See infra* at 648. The Court has previously entered an order scheduling an evidentiary hearing in connection with Barseghyan's motion to suppress. Decision is reserved on this motion pending the outcome of the hearing.

F.Supp.2d 396, 401 (S.D.N.Y.2005) (quoting *Gates,* 462 U.S. at 235, 103 S.Ct. 2317 (internal quotation marks omitted)). Moreover, the issuing court's determination of probable cause is entitled to "substantial deference," *Wagner,* 989 F.2d at 72, and any doubt about the existence of probable cause must be resolved in favor of upholding the issuing court's order. *See Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. 2317; *United States v. Labate,* No. 00 Cr. 632(WHP), 2001 U.S. Dist. LEXIS 6509, 2001 WL 533714, at *16 (S.D.N.Y. May 18, 2001).

█ The affidavit submitted by Mario Pisano, Special Agent with the Federal Bureau of Investigation ("FBI"), in support of the government's application for authorization to intercept wire communications over Spies's and Solomonyan's cell phones is based on numerous sources. (*See* Mario Pisano Aff., Apr. 7, 2004, Affirmation of Benjamin M. Lawsky, July 10, 2006 ("Lawsky Affirmation"), Ex. A ("First Pisano Affidavit").) The primary source was information provided to the government by a confidential informant ("CI") who had direct contact with Spies and, subsequently, Solomonyan. According to the CI, Spies talked of a contact who was looking to sell military weapons, including large quantities of rocked propelled grenades ("RPGs"). (*Id.* ¶ 16.) Spies then set up a meeting with his contact, later identified as Solomonyan, which took place on March 10, 2004. At the meeting, Solomonyan discussed the terms of sale of a shipment of RPGs, including the type of RPG, price, and how the weapons would be transported. (*Id.* ¶ 24.) A subsequent meeting was held on March 17, 2004 at which time Solomonyan provided further details on the proposed sale of RPGs and the possibility of selling other military weapons. (*Id.* ¶ 25.)

Solomonyan contends that the First Pisano Affidavit is based solely on information provided by the CI, but the affidavit in fact cited substantial corroboration of the CI's reports. There was physical surveillance of the March 10 meeting at which Spies introduced Solomonyan to the CI. (*Id.* ¶ 17). Phone toll records confirmed numerous calls between Solomonyan and Spies and between Spies and the CI. (*Id.* ¶ 27.) Certain calls between Spies and the CI that were made with Spies's cell phone were also recorded. In one such call on April 2, 2004, Spies and the CI discussed the proposed deal and when the next meeting with Solomonyan would take place. (*Id.* ¶ 26.) Pen register records reveal that immediately after the Spies—CI conversation, Spies placed two calls to Solomonyan, called the CI, and then received a call from Solomonyan. Spies also used his cell phone to call the CI to tell him that Solomonyan would meet with them in two weeks. (*Id.*) The pattern and substance of these conversations, considered in the context of all of the information set forth in the First Pisano Affidavit, are more than sufficient to establish that Spies and Solomonyan probably had used and would continue to use their cell phones to engage in a conspiracy to traffic in military weapons. *Wagner,* 989 F.2d at 72–74 (applying "common sense, totality-of-the-circumstances test set forth in *Gates* " to find that confidential informant's information set forth in affidavit was truthful). While defendants are free to offer at trial an innocent explanation for their conduct, they are unable to establish that the issuing court lacked a substantial basis for authorizing wiretaps of Spies's and Solomonyan's cell phones.

█ Similarly, the issuing court had a substantial basis for finding probable cause to authorize wiretap surveillance of Kharabadze's home phone because Agent Pisano submitted evidence that Khara-

badze was using his home phone to engage in conspiratorial conduct with Solomonyan and Spies. The affidavit in support of the government's application for authorization to wiretap this phone described in detail numerous calls over the Kharabadze home phone that were intercepted pursuant to the wiretaps on the Solomonyan and Spies cell phones. (*See* Mario Pisano Aff., May 28, 2004, Lawsky Affirmation, Ex. B ("Second Pisano Affidavit").) For example, on April 23, 2004, Solomonyan called Kharabadze at home to determine if "everything was still the same." (*Id.* ¶ 22(b).) Kharabadze said that there was a problem because certain Russian military forces were operating along the Russian border and "there's no making a deal with them." (*Id.*) The next night, Solomonyan called Spies to report on his phone call with "the guy" (Kharabadze) and the fact that there was now a problem and that "they were waiting for things (in Russia) to calm down." (*Id.* ¶ 22(c).) Spies in turn called the CI to and directly discussed what Kharabadze (using his home phone) had told Solomonyan. (*Id.* ¶ 22(d).) In the context of all of the other evidence that Solomonyan was attempting to bring RPGs and other military weapons into the country through a third-party supplier, these calls establish a substantial basis for concluding that Kharabadze was using his home phone to engage in criminal activity.

### B. *Necessity*

 Section 2518(3)(c) requires a court reviewing a wiretap application to determine, as a condition of authorizing the wiretap, that "other investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Both affidavits describes the investigative methods employed prior to the application for wiretapping, methods that included examination of telephone toll records and cell

phone pen registers, physical surveillance, and the use of a CI who made consensual recordings of his conversations with other defendants. (First Pisano Aff. ¶ 29(a)-(c).) Defendants argue that the government should have made further use these techniques, as well as additional techniques, before applying for wiretaps. However, the affidavits explain in detail why reliance on the CI, physical surveillance, and analysis of toll records and pen registers were unlikely to be sufficient to learn the full extent of the arms trafficking network. (First Pisano Aff. ¶ 29; Second Pisano Aff. ¶¶ 27–29.) The government is not required to exhaust all other investigative procedures before a wiretap may be authorized. *See United States v. Scala*, 388 F.Supp.2d at 404 (citing *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir.1987)). "Instead, a reasoned explanation, grounded in the facts of the case, and which squares with common sense, is all that is required." *Id.* (citations and internal quotation marks omitted); *see also United States v. Trippe*, 171 F.Supp.2d 230, 236 (S.D.N.Y.2001) ("[T]he application must be viewed in a practical and common sense manner and need be only minimally adequate to support the issuing judge's determination of necessity."). Moreover, a reviewing court owes significant deference to the issuing court's prior finding of necessity. Applying this standard, the Court finds that the wiretap application was fully supported by a finding of necessity.

### C. *Good Faith*

 Even if the Court assumes for the sake of argument that the government lacked probable cause or necessity, many courts—including several in this District—have applied the exclusionary rule's good faith exception to wiretap orders. *See, e.g., United States v. Scala*, 388 F.Supp.2d at 403; *United States v. Gotti*, 42

F.Supp.2d 252, 267 (S.D.N.Y.1999); *United States v. Bellomo,* 954 F.Supp. 630 (S.D.N.Y.1997). "If probable cause is found lacking for a warrant, evidence gathered pursuant to the warrant will be suppressed only if: (1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit for the wiretap order; or (3) the agent's reliance on the warrant was not reasonable." *Scala,* 388 F.Supp.2d at 403 (*citing United States v. Leon,* 468 U.S. 897, 922–25, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). As there is no indication of judicial bias, police impropriety or unreasonable reliance on the warrant, the good faith exception applies to this case.

### D. *The Franks Hearing*

■ Solomonyan requests a *Franks* hearing to determine the accuracy of the statements contained in the First Pisano Affidavit. A defendant is entitled to a *Franks* hearing where the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *accord United States v. Fermin,* 32 F.3d 674, 677 (2d Cir.1994) (applying *Franks* to representations impacting probable cause for Title III authorization). Here, however, Solomonyan's only claim of inaccuracy is that in describing the April 2, 2004 call between Spies and the CI, Agent Pisano wrongly stated, "According to CI, during this call, SPIES discussed the planned deal for the RPGs." (First Pisano Aff. ¶ 26.) Solomonyan claims that this representation was deceptive because the recording did not explicitly indicate that RPGs were the topic of discussion.

■ As an initial matter, Agent Pisano's statement is completely consistent with the recording of the call. The affidavit does not state or imply that Spies made an explicit reference to "RPGs" but only that "[a]ccording to CI," Spies discussed the transaction. *Id.* Had Spies made an explicit reference to RPGs in the recorded conversation, there would have been no necessity for Pisano to preface his remarks with the phrase "[a]ccording to CI." The next sentence identifies with specificity what Spies said during this call regarding the RPGs: "Spies stated that their planned deal was going fine." *Id.* Moreover, on the tape recording of the call, which Solomonyan has received in discovery, the CI asks, The CI also asked, "Is our deal still good" to which Spies replies, "Yeah ... of course." Considered in the context of all the information presented in Pisano's affidavit, it is reasonable to infer that the "deal" referred to was in fact the RPG deal. Thus the Court finds no merit to defendant's claim that the First Pisano Affidavit is deceptive.

Furthermore, even if the contested statement were false, misleading, or deceptive, Solomonyan must still prove that "the allegedly false statement is necessary to the finding of probable cause" to warrant a *Franks* hearing. *See Franks,* 438 U.S. at 154, 98 S.Ct. 2674. As stated previously, the government has demonstrated substantial probable cause in this case, which would not have been defeated by the alleged omission in the affidavit. Therefore, there is no basis for the court to hold a *Franks* hearing.

### 2. KHARABADZE'S MOTION TO DISMISS COUNTS ONE AND TWO AS VOID FOR VAGUENESS

■ Defendant Kharabadze moves to dismiss Counts One and Two of the

Indictment on the grounds that 22 U.S.C. § 2778, the criminal statute allegedly violated, is void for vagueness. To determine whether a penal statute is unconstitutionally vague, a court must decide whether the statute defines the criminal offense "with sufficient definiteness so that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). When, as here, "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only as applied in light of the specific facts of the case at hand, and not with regard to the statute's facial validity." *United States v. Rybicki,* 354 F.3d 124, 129–30 (2d Cir.2003) (en banc).

Section 2778, part of the Arms Export Control Act ("AECA"), authorizes the President to establish a Munitions List, which includes "defense articles" and "defense services," the import and export of which are subject to registration and licensing requirements. *See* § 2778(b). The AECA also provides for criminal sanctions for any person who willfully violates any provision of the Act or any rule or regulation issued pursuant to the Act's authority. *See* § 2778(c).

Count Two of the Indictment charges Kharabadze and others with violating, and aiding and abetting in violations of, the AECA. Specifically, the defendants named in Count Two are charged with *"engag[ing] in the business of* brokering activities with respect to the ... import, or transfer of any foreign defense article" without registering with the United States government. *See* § 2778(b)(1)(A)(ii)(I) and (IV) and (c) (emphasis added). Defendant Kharabadze alleges that section 2778 is unconstitutionally vague because it contains no definition of the phrase "engaged in the business of." Defendant argues that this phrase renders the statute ambiguous because one cannot know whether the statute is directed at those who participate a single time in the prohibited activities, or only those who conduct such transactions on a regular basis.

Defendant's argument is without merit. The AECA defines precisely the activity that is covered by the term "brokering activities":

> Such brokering activities shall include the financing, transportation, freight forwarding, or taking of any other action that facilitates the manufacture, export, or import of a defense article.

§ 2778(b)(1)(A)(ii)(II). This definition prescribes on its face the illegal importation of a single "defense article." Should there be any doubt on this issue, the regulations implementing the AECA state that "engaging in the business of brokering activities requires only one action." 22 C.F.R. § 129.2(b). *See also* 22 C.F.R. § 127.1(a)(5) ("[E]ngaging in the business of manufacturing or exporting defense articles or furnishing defense services requires only one occasion of manufacturing or exporting a defense article or furnishing a defense service"). These regulations resolve any possible ambiguity as to the reach of the AECA's criminal provisions. *See McEntee v. MSPB,* 404 F.3d 1320, 1333 (Fed.Cir.2005) ("The appropriate inquiry, then, is ... whether the amended statute and its implementing regulations are sufficiently definite so as to give 'fair warning.'")

**3. DEMARE'S MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR AND SIX FOR FAILURE TO STATE A CAUSE OF ACTION**

Defendant DeMare moves to dismiss Counts One, Two, Three, Four,

and Six of the Indictment for failure to state a cause of action.[3] The Supreme Court has held, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see also United States v. Brown*, 321 F.Supp.2d 598, 600 (S.D.N.Y.2004) (applying *Hamling* standard). However, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992) (internal quotation marks omitted)). With respect to the five counts at issue, the Indictment articulates the elements of each crime charged, and states the approximate time and place of the alleged crimes. Furthermore, for most of the counts, the Indictment provides additional details such as the specific weapons involved, names of alleged coconspirators, and alleged overt acts in furtherance of conspiracies. Therefore, the Indictment provides "sufficient detail to allow the defendant[ ] to prepare a defense and to invoke the protection of the Double Jeopardy clauses of the Fifth Amendment against any subsequent prosecution for the same offense." *Alfonso*, 143 F.3d at 776.

Consequently, the Indictment is not subject to dismissal.

DeMare also argues that the Indictment is flawed because it fails to specify the foreign origin of the weapons. However, the origin of the weapons is not an essential element of the offense, *see* 18 U.S.C. § 922(*o*); consequently, the Indictment properly tracks the language of the statute and is facially valid. DeMare further argues that the indictments for conspiracy should be dismissed because the government failed to disclose a specific agreement to illegally transfer firearms. However, an indictment for conspiracy "need only put the defendants on notice that they are being charged with a conspiracy to commit the underlying offense." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir.1995). The government need not "allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *Id.* (quoting *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545 (1927)).

In sum, the Court finds that the Indictment adequately notifies DeMare of the elements of the charges against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. His motion to dismiss Counts One, Two, Three, Four, and Six of the Indictment is therefore denied.

---

**3.** In addition to his motion to dismiss for failure to state a claim, DeMare makes two related requests. First, he asserts the defense of collateral estoppel, claiming that he lawfully purchased and sold the firearms in Florida. In going beyond the face of the Indictment, defendant attempts to invoke the equivalent of a motion for summary judgment in a criminal case. Unlike the Federal Rules of Civil Procedure, "the Federal Rules of Criminal Procedure contain no provision for a motion for summary judgment or its equivalent." *See United States v. Gulla*, 833 F.Supp. 274, 284 (S.D.N.Y.1993). Defendant's motion is therefore denied, without prejudice to his right to challenge the sufficiency of evidence at trial. Second, DeMare moves for an unspecified jury instruction that informs the jury of this defense. This motion is premature and the Court will therefore reserve resolution of the issue until the charging conference at trial.

## 4. DEFENDANTS' MOTIONS FOR BILLS OF PARTICULARS

Defendants Solomonyan, Chvelidze, Vorobeychik, and Kharabadze individually move the Court to compel the government to provide a bill of particulars.

Federal Rule of Criminal Procedure 7(f) provides a district court with the discretion to direct the filing of a bill of particulars. 1 Charles Alan Wright, Federal Practice and Procedure § 129, at 648 (3d ed.1999). The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). However, "a bill of particulars is not a matter of right." *United States v. Gibson*, 175 F.Supp.2d 532, 536 (S.D.N.Y.2001); *see also* Wright § 129, at 648. "[I]f the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985). Generally, a bill of particulars is required only "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chalmers*, 410 F.Supp.2d 278, 286 (S.D.N.Y.2006) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990)). "When exercising this discretion, a court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery, and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *Gibson*, 175 F.Supp.2d at 536.

In evaluating defendants' specific requests for further particulars, the Court notes the considerable amount of information that has been provided by the government. The underlying complaint is comprised of sixty-one pages of evidentiary detail and is itself a roadmap to the government's case. In addition, defendants have received thousands of recordings of intercepted communications, numerous transcripts, and line sheets. Some of this information has been produced in electronic form and permits each defendant to search the data for relevant evidence. As a general matter, then, defendants appear to have sufficient information to prepare for trial, to prevent surprise and to interpose a plea of double jeopardy in the event of a second prosecution. In this context, the Court will address defendants' specific requests below.

### A. *Identities of Unindicted Coconspirators*

Citing no legal basis, Solomonyan, Vorobeychik, and Chvelidze each demand a bill of particulars specifying the identities of other unindicted coconspirators. The government contends that the defendants have sufficient details to apprise them of the charges contained in the Indictment.

A court considering a defendant's request for the identity of unindicted coconspirators must engage in a highly fact-specific inquiry. *See Chalmers*, 410 F.Supp.2d at 286 (collecting cases and noting that the Second Circuit "has upheld decisions granting and denying requests for the identity of co-conspirators"); *see, e.g., Torres*, 901 F.2d at 233–34 (affirming denial); *United States v. Feola*, 651 F.Supp. 1068, 1131–34 (S.D.N.Y.1987) (granting demand), aff'd without op., 875 F.2d 857 (2d Cir.1989). The question is whether the names of unindicted coconspirators are necessary to prepare a de-

**642**

fense and avoid surprise. *Chalmers,* 410 F.Supp.2d at 286–87; *United States v. Nachamie,* 91 F.Supp.2d 565, 572–73 (S.D.N.Y.2000). Determination of that issue turns on a number of factors, including "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to coconspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation." *Nachamie,* 91 F.Supp.2d at 572–73. As noted, defendants in this case possess substantial information about the charges against them. While there are a large number of identified coconspirators, the conspiracies alleged are not themselves complex. Thus defendants do not have the need, as compared, say, to defendants in an intricate fraud conspiracy, to identify unnamed coconspirators in order to piece together the nature of the charges against them. *Compare id.* At 573 (granting request for identity of unindicted coconspirators in Medicare fraud conspiracy, but distinguishing the case from cases concerning "narcotics trafficking or murder," where protecting names of unindicted coconspirators would be a "legitimate concern"). While knowing the identity of unindicted coconspirators might be useful to the defense, "the question is not whether the information would be useful to the defense, but rather whether it is necessary." *Chalmers,* 410 F.Supp.2d at 286–87. Here, such information is not necessary and defendants' request is therefore denied.

**B. *Solomonyan's Other Requests***

Solomonyan also requests that the government specify: (1) the time and duration of phone conversations that relate to the overt acts charged in Counts One and Three of the Indictment; and (2) the identity of all locations referred to as "elsewhere" in the Indictment. (Solomonyan Br. 24–28.)

Solomonyan demands the time and duration of the phone conversations relating to overt acts, while at the same time conceding that the government already has produced hours of recordings and specified the dates of the alleged conversations in the Indictment. The government correctly notes that Solomonyan can match up calls that correspond to overt acts in the Indictment easily by reviewing the recordings, line sheets, and transcripts provided in electronic form. "A district court should deny a bill of particulars 'if the information sought by defendant is provided in the indictment or in some acceptable alternative form.'" *United States v. Lino,* No. 00 CR. 632(WHP), 2000 U.S. Dist. LEXIS 18753, 2001 WL 8356, at *4 (S.D.N.Y. Dec.29, 2000) (quoting *Bortnovsky,* 820 F.2d at 574). As Solomonyan has already received the information he seeks through discovery, the Court denies his request.

Solomonyan also demands the specific locations referred to as "elsewhere" in the Indictment. "It is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case." *Gibson,* 175 F.Supp.2d at 537. The detailed Complaint, Indictment, and discovery materials already provided are sufficient to put Solomonyan on notice of the nature of the charges against him and prepare for trial. Therefore, his request for bill of particulars including this information is denied. *See, United States v. Mercado,* No. 02 Cr. 675(WHP), 2003 U.S. Dist. LEXIS 13075, 2003 WL 21756084, at *3–*5 (S.D.N.Y. July 30, 2003) (denying request for location of the place cited as "elsewhere" in indictment).

## C. *Vorobeychik's Other Requests*

■ Vorobeychik's request for a bill of particulars is a nine-page list of evidentiary details he would like the government to provide. These requests include information as to (1) every overt act committed by each coconspirator, (2) the time and place each coconspirator joined the conspiracy; and (3) the bases for all charges in the Indictment. (Vorobeychik Br. 17–26.) As the Court has held, the government has provided all defendants with sufficient detail to permit them to prepare their defenses and avoid undue surprise at trial. The Court also notes that Vorobeychik has confirmed that the government has provided him with further documents in response to his motion, and that the parties are in conversation regarding certain aspects of Vorobeychik's requests for additional information. (Tr. H'rg 7:3–9:8, July 19, 2006.) The Court will remain open to reconsideration of any particularized request that Vorobeychik can demonstrate with specificity is necessary to prepare his defense.

## D. *Kharabadze's Additional Request*

■ Kharabadze requests a bill of particulars—including specific dates, actions and conversations—that relate to his "brokering of business activities." (Kharabadze Br. 29–31.) Kharabadze argues that the charge against him is so cryptic that this information is needed to inform him of the crime for which he must stand trial. (*Id.*) For the reasons already discussed, a bill of particulars is not the proper vehicle for what amounts to a general discovery request. Considering the detail provided in the sixty-one page complaint, the recordings produced by the government, and the Second Pisano Affidavit, the government has given this defendant adequate notice of the crimes with which he is being charged. Therefore, his motion is denied.

## 5. DEMARE'S REQUEST FOR A PRETRIAL HEARING TO DETERMINE ADMISSIBILITY OF AN AUDIO RECORDING

■ Defendant DeMare requests a pretrial hearing to determine the accuracy of a two-minute recorded phone conversation between himself and the CI. (DeMare Mot. (No. 11), ¶ 7.) DeMare argues that the tape is inaudible and that a hearing is necessary to prevent "embellishment and speculation." (*Id.*) The government responds that DeMare's motion should be denied because he fails to argue that the tape is "legally" inaudible, and because at trial the defense may cross-examine the people who will transcribe the call for the government or introduce a competing transcript. (Gov't Mem. Law in Opp'n to Defs.' Pretrial Mots. ("Gov't Opp'n") 74–75.) As the government has yet to enhance the tape or compile a final transcript of its contents (*see id.*), DeMare's motion is premature. Accordingly, DeMare's motion is denied without prejudice. *Cf. United States v. Roberts*, No. 90 Cr. 913(DNE), 1991 U.S. Dist. LEXIS 14758, 1991 WL 221099, at *6 (S.D.N.Y. Oct. 17, 1991) (denying motion for pretrial conference to determine admissibility because government had not yet decided which recordings it would seek to admit). If, after the government transcript is compiled, DeMare still objects to the tape's accuracy, he may raise the issue through a motion *in limine.*

## 6. DEFENDANTS' REQUESTS FOR DISCLOSURE OF PEDIGREE INFORMATION OF CONFIDENTIAL INFORMANT

■ Solomonyan and Nadirashvili request that the government reveal the CI's personal information so that defense counsel may interview him before trial.

(Solomonyan Mot. 30–31; Nadirashvili Mot. 11–12.) The government claims the privilege to protect the CI's identity because of its concern for the CI's safety. (Gov't Opp'n 77–78.) The Supreme Court has said that "[t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Nevertheless, "the privilege must give way 'where the disclosure of an informant's identity, or of the contents of this communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause.'" *United States v. Russotti,* 746 F.2d 945, 949 (2d Cir.1984) (quoting *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623). "The defendant is generally able to establish a right to disclosure 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence,'" *United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.1988) (quoting *Russotti,* 746 F.2d at 950), but mere "[s]peculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *United States v. Fields,* 113 F.3d 313, 324 (2d Cir.1997) (citing *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623).

■ Solomonyan argues that disclosure is proper because the CI will form the linchpin of the government's case (Solomonyan Mot. 30–31), while Nadirashvili argues that the CI is the key—if not only—witness against him (Nadirashvili Mot. 12). However, neither Solomonyan nor Nadirashvili suggests that the CI has informa-

tion that would exculpate them, nor have they adequately explained their interests in learning the CI's identity. In *United States v. Santiago,* the court rejected a similar disclosure request because the defendant's motion was "no more than a cursory recitation of the law pertaining to disclosure of confidential informants' identities" and "fail[ed] to inform the Court why such information is material to his defense." 174 F.Supp.2d 16, 40 (S.D.N.Y. 2001). Furthermore, "even where the confidential informant was both a witness and participant in the crime with which the defendant is charged, courts have rejected disclosure of the informant's identity if the defendant was unable to show that the informant's testimony "would have been of even marginal value to the defendant's case."" *Id.* (quoting *United States v. Jimenez,* 789 F.2d 167, 170 (2d Cir.1986)). Because neither Solomonyan nor Nadirashvili's have stated with specificity the reasons why the CI's testimony is material to their defense, their motions are denied.

The Court also notes that although no showing has been made to support disclosure of the CI's identity, the government has committed to identifying the CI two weeks before trial, at the same time it will provide *Giglio* and Section 3500 materials. Balancing the policy considerations underlying the informant's privilege and the government's stated concern about the CI's safety, against the defendant's generalized but unspecified needs, the Court concludes that the timing of this disclosure is adequate to satisfy the competing interests of both the government and the defendants.

## 7. DEFENDANTS' REQUESTS FOR EARLY DISCLOSURE OF TRIAL MATERIALS

### A. *Brady Material*

■ Several defendants have requested immediate disclosure of *Brady*

material. (Chvelidze Mot. 3–4; Nadirashvili Mem. Law 5–9; Spies Mot. 4–5; Vorobeychik Mot. 12–13.) The government has an obligation to produce *Brady* evidence in sufficient time for the defense to make effective use of it at trial. *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir.2001). Here, the government has represented to defense counsel that it knows of no *Brady* material and that it will disclose any such material in a timely fashion if such evidence is discovered. (Gov't Opp'n 78). This satisfies the government's current *Brady* obligations. *See, e.g., United States v. Underwood*, No. 04 Cr. 424(RWS), 2005 U.S. Dist. LEXIS 6810, 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005) ("The courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to Brady where the government has made such good faith representations."). Accordingly, defendants' motions are denied.

### B. *Giglio Material*

■■■■■ Both *Brady* and *Giglio* material must be provided "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *See Coppa*, 267 F.3d at 142. In other words, while there is no fixed schedule for production, such material must be produced "in time for its effective use" at trial. *Id.* at 144. The government has proposed to produce impeachment material under *Giglio*, if there is any, and Jancks

Act material on the Friday before the week in which the testimony of any witness is scheduled to commence. This schedule is sufficient to permit the effective use of impeachment materials at trial. Defendants' requests are therefore denied.

### C. *Witness List*

■■■■■ Solomonyan requests that the government produce a witness list thirty days before trial. (Solomonyan Mot. 28–29.) Courts are not required to compel the release of the government's witness list. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.") However, courts of the Southern District have generally applied the *Turkish* six-factor test[4] when deciding whether they should exercise their discretionary powers to order the release of the government's witness list. *See, e.g., United States v. Falkowitz*, 214 F.Supp.2d 365, 394–395 (S.D.N.Y. 2002); *Santiago*, 174 F.Supp.2d at 38–39. The defense may not demand disclosure while relying only on an "abstract, conclusory claim that such disclosure [is] necessary to its proper preparation for trial." *United States v. Cannone*, 528 F.2d 296, 301–302 (2d Cir.1975); *see also United States v. Vega*, 309 F.Supp.2d 609, 617 (S.D.N.Y.2004) (relying on *Cannone* ).

4. *United States v. Turkish* asked the following six questions to determine whether a list of witnesses should be ordered turned over to defendant: "(1) Did the offense alleged in the indictment involve a crime of violence?; (2) Have the defendants been arrested or convicted for crimes involving violence?; (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?; (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?; (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?; and (6) Do the defendants have limited funds with which to investigate and prepare their defense?" 458 F.Supp. 874, 881 (S.D.N.Y.1978).

Here, Solomonyan argues that he "cannot afford to squander resources tracking down potential witnesses." (Solomonyan Mot. 29.) While a defendant's financial status may influence the Court's decision, it is only one of six factors set forth in *Turkish.* The Court must also consider the fact that defendant is accused of conspiring to sell foreign military weaponry, and thus the government has reason to be concerned for the safety of potential witnesses. Moreover, defendant has made no showing that this is a particularly complex case involving a significant number of documents and witnesses or an extended time frame, any of which might justify the early production of a witness list. Accordingly, defendant's request for production of a witness list is denied.

### D. *"Other Crimes" Evidence*

#### 1. *Preclusion of "Other Crimes" Evidence*

Spies moves to preclude all evidence of uncharged crimes that the government might attempt to introduce under Section 404(b) of the Federal Rules of Evidence because the probative value of any such evidence is outweighed by their prejudicial effects. (Spies Mot. 3–4.) The motion is premature because the government has not yet decided what evidence they will seek to introduce. (Gov't Opp'n 85–87.) The Court will reconsider Spies's motion at the appropriate time. *See United States v. Dames,* 380 F.Supp.2d 270, 277 (S.D.N.Y.2005) (dismissing defendant's premature preclusion motion without prejudice); *see also United States v. Sanchez,* No. 01 Cr. 277(RCC), 2003 U.S. Dist. LEXIS 6348, 2003 WL 1900851, at *5 (S.D.N.Y. April 17, 2003) (same).

#### 2. *Early Notice of "Other Crimes" Evidence*

Several defendants seek early notice of the "other crimes" evidence the government will seek to introduce at trial. (Chvelidze Mem. of Law 6; Spies Mot. 1–2; Nadirashvili Mem. of Law 2, 9–11; Vorobeychik Mot. 17.) The government offers to give notice two weeks prior to trial. (Gov't Opp'n 84.) While Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trail," it sets no minimum time period. The Court finds that two weeks notice is adequate. *See United States v. Valenti,* 60 F.3d 941, 945 (2d Cir.1995) (holding a period of four days may constitute reasonable notice in advance of trial); *United States v. Berganza,* No. 03 Cr. 987(DAB), 2005 U.S. Dist. LEXIS 2203, 2005 WL 372045, at *9 (S.D.N.Y. Feb. 16, 2005) ("Because the Government has consented to provide its 404(b) disclosures to Defendant fourteen days prior to trial, and because no trial date has yet been set by this Court, Defendant's motion to compel early 404(b) disclosure is denied."); *United States v. Velasquez,* No. 96 Cr. 126(JFK), 1997 U.S. Dist. LEXIS 10631, 1997 WL 414132, at *5 (S.D.N.Y. July 23, 1997) ("This portion of the motion requires no further discussion because two weeks provides 'reasonable notice.' "); *United States v. Richardson,* 837 F.Supp. 570, 575–576 (S.D.N.Y.1993) (directing government to provide notice of prior bad acts within ten days of trial).

### E. *Early labeling of Audio and Documentary Evidence*

Solomonyan requests a list of the tapes and transcripts that the government plans to use at trial. (Solomonyan Mot. 31–32.) The government offers to disclose its list thirty days prior to trial. (Tr. 32:7–32:16) This schedule is sufficient to permit any challenges to accuracy or admissibility to be resolved in a timely manner and is, therefore, adopted by the Court. *See*

*Lino,* 2001 WL 8356, at *20 (directing the government to "designate on a preliminary basis, no later than thirty days prior to the start of each severed trial, the audio tapes that it intends to rely on at trial in its case-in-chief."); *United States v. Gotti,* No. 02 Cr. 743(RCC), 2004 U.S. Dist. LEXIS 4950, 2004 WL 602689, at *15 (S.D.N.Y. Mar. 26, 2004) (finding that production of audio and video two weeks before trial would "provide Defendants sufficient time to make use of the disclosed material"); *Falkowitz,* 214 F.Supp.2d at 392–93 (ordering government to produce working copy of its exhibit list one week prior to trial).

### F. Release of Codefendants' Statements

 Several defendants request that the government release statements of codefendants, so as to allow time to propose redactions pursuant to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). (Chvelidze Mot. 5; Nadirashvili Mem. of Law 5–9.) The government offers to release statements not previously produced when it makes its *in limine* motions at which time it will propose necessary redactions. (Gov't Opp'n 88 n. 24.) This schedule is adopted by the Court.

## 8. DEFENDANTS' REQUESTS FOR ADDITIONAL DISCOVERY

### A. Solomonyan's Additional Requests

 Solomonyan requests the release of all scientific tests and analyses related to the case. (Solomonyan Mot. 32.) The government responds that it has produced such evidence and will produce any additional evidence as it becomes available. (Gov't Opp'n 88.) Based on the government's representations, an order is not warranted.

### B. Spies's Additional Requests

 Spies requests that the government provide any conversation or transcript that refers to him or his activities. (Spies Br. 2–3.) The government contends that it has already turned over hundreds of phone records and transcripts and should not be forced to organize the evidence for the defendant. In addition, the government points out that Spies can electronically search the line sheets that have been produced. (Gov't Opp'n 88–89.) Because the government has already provided the information and "it is not the job of the government to neatly organize and separate the documents for the defendants," *United States v. Upton,* 856 F.Supp. 727, 747–748 (E.D.N.Y.1994), defendant's request is denied.

### C. Vorobeychik's Additional Requests

#### 1. General Request

 Vorobeychik requests his statements, recordings, films, prior criminal record evidence, physical evidence, documentation evidence, and scientific evidence. (Vorobeychik Mot. *passim.*) As the government represents that it has released this information (Gov't Opp'n 90–91), this Court denies this request.

#### 2. Coconspirator Statements

 Vorobeychik requests all coconspirator statements that refer to him. (Vorobeychik Mot. 8.) Coconspirator statements are not subject to production under Rule 16(a). *See In re United States,* 834 F.2d 283, 286–87 (2d Cir.1987) (granting mandamus to vacate order requiring production of witness statements); *United States v. Percevault,* 490 F.2d 126, 128–32 (2d Cir.1974) (holding that ordering government to disclose coconspirator statements under Rule 16(a) was "untenable"); *Falkowitz,* 214 F.Supp.2d at 393–394 ("The

Government's obligation to provide statements made by co-defendants and co-conspirators is set forth in the Jencks Act, codified at 18 U.S.C. § 3500. Section 3500 'provides that no prior statement made by a government witness shall be the subject of discovery until that witness has testified on direct examination.' Thus, district courts are prohibited from ordering the pre-trial disclosure of such statements.") (internal citation omitted). Therefore, Vorobeychik's request is denied.

### 3. *Grand Jury Information*

■■■■■ Citing no legal authority, Vorobeychik requests information about the grand jury proceedings that returned his indictment. (Vorobeychik Mot. 4–6.) For the grand jury proceedings to be unsealed, a defendant must make "a strong showing of particularized need." *United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). "[D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.* As Vorobeychik asserts no reason whatsoever to compel the unsealing of grand jury information, his request is denied.

### 9. DEMARE'S REQUEST FOR PRE-TRIAL CONFERENCE TO DETERMINE ADMISSABILITY OF CO-CONSPIRATOR'S STATEMENTS

■■■■■ DeMare requests a pretrial hearing to determine the admissibility of codefendant Colpani's statements. (DeMare Mot. (No. 10), ¶ 3–4.) The government argues that the Court's decision should be made during trial. (Gov't Opp'n 94–97.) Coconspirators' statements may be admitted under Federal Rule of Evidence 801(d)(2)(E) if a court determines by a preponderance of the evidence, "first,

that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Desena,* 260 F.3d 150, 157–158 (2d Cir.2001) (quoting *United States v. Gigante,* 166 F.3d 75, 82 (2d Cir.1999)). As an admissibility ruling during trial is preferable to staging a mini-trial that would significantly prolong the proceedings and afford the defendants a complete preview of the government's evidence, *see United States v. Ianniello,* 621 F.Supp. 1455, 1478 (S.D.N.Y.1985), and as DeMare provides no reason whatsoever to justify a pretrial proceeding, his request is denied.

### 10. SOLOMONYAN'S REQUEST FOR THE PRESERVATION OF HAND-WRITTEN AGENT NOTES

■■■■■ Solomonyan requests that the government be ordered to preserve the handwritten notes of investigating agents. Generally, the government has an obligation to preserve handwritten notes made by agents during witness interviews. *See United States v. Taylor,* 707 F.Supp. 696, 707 (S.D.N.Y.1989) (holding government has an obligation to preserve for trial handwritten notes made by agents during witness interviews); *Feola,* 651 F.Supp. at 1136 (granting motion for preservation of all handwritten notes by federal law enforcement personnel). However, this obligation is relieved when the agent makes a formal report based on his own notes. The Second Circuit has held that "the Jencks Act, 18 U.S.C. § 3500, imposes no duty on the part of law enforcement officers to retain rough notes when their contents are incorporated into official records and they destroy the notes in good faith." *United States v. Terrell,* 474 F.2d 872, 877 (2d Cir.1973); *see also United States v. Ma,* No. 03 CR. 734(DAB), 2006 U.S. Dist. LEXIS 11660, 2006 WL 708559, at *15–*16

(S.D.N.Y. Mar.21, 2006) ("It is well established in the Second Circuit that Government agents need not preserve rough notes 'if the agents incorporate them into formal reports.' ") (quoting *United States v. Elusma,* 849 F.2d 76, 79 (2d Cir.1988) (collecting cases)); *see also United States v. Fruchter,* 104 F.Supp.2d 289, 314 (S.D.N.Y.2000). The Court is unaware of the existence of agents' notes whether incorporated in final reports or not. As a precaution, the government is ordered to preserve all presently existing notes, whether or not they have been incorporated in formal reports. To this extent, Solomonyan's motion to preserve the investigators' handwritten notes is granted.

## 11. DEFENDANTS' MOTIONS FOR SEVERANCE

### A. Severance Motions Based on the Length and Complexity of Trial

█ Rule 14(a) of the Federal Rules of Criminal Procedure provides that:

[if] the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Motions to sever are committed to the sound discretion of the trial judge. *United States v. Haynes,* 16 F.3d 29, 32 (2d Cir. 1994).

█ Defendants Chvelidze, DeMare, Kharabadze, Nadirashvili, and Spies, relying on *United States v. Casamento,* 887 F.2d 1141 (2d Cir.1989), move to sever on the grounds that the length of trial and number of defendants will exceed the jury's decisionmaking powers and deprive them of a fair trial. (Chvelidze Br. 3; DeMare Mot. (No. 8), ¶ 7–8; Kharabadze Br. 24; Nadirashvili Br. 4; Spies Br. 6.) In *Casamento* the Second Circuit declined to find an abuse of discretion where twenty-one defendants participated in a seventeen-month trial. However, the Court recognized the potential prejudice to defendants in lengthy, complex, multiple-defendant trials and gave this guide for the exercise of discretion by trial courts:

First, the district judge should elicit from the prosecutor a good-faith estimate of the time reasonably anticipated to present the government's case.... [T]he judge need not accept the estimate without question but should be free to make an independent assessment....

In those cases where the judge determines that the time for presentation of the prosecution's case will exceed four months, the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants.

887 F.2d at 1151–52. Here, the government estimates that its case-in-chief will last approximately four to five weeks. (Govt.Br.100.) This is substantially less than the four-month threshold set out in *Casamento.* Furthermore, though there are fourteen defendants scheduled for trial on October 30, 2006, the government has represented to the Court that the trial will ultimately involve "far less than ten." (*See* Govt. Br. 100.) Therefore, as the length and complexity of this trial will not deprive defendants of due process, defendants' requests for severance on this basis are denied.

### B. Severance Motions Based on Alleged Prejudicial Spillover

█ Several defendants base their severance motions on alleged prejudicial spillover that would occur during a joint trial—

that is, the risk that the jury will consider evidence relating to one defendant in determining the guilt or innocence of another defendant. (Chvelidze Br. 3–4; DeMare Mot. (No. 8), ¶ 7–8; Kharabadze Br. 23; Nadirashvili Br. 3–4; Spies Br. 6.) "A defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir.1988). The defendant must show that he may suffer prejudice so substantial that a "miscarriage of justice" will occur. *Id.; see also United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir.1993) ("[A] defendant must establish more than that he would have a better chance of obtaining an acquittal at a separate trial.... In fact, an appellant must show that a 'miscarriage of justice' has occurred." (citation and internal quotation marks omitted)); *United States v. Lasanta*, 978 F.2d 1300, 1306 (2d Cir.1992) (decision to deny severance is "virtually unreviewable" because defendant must show such severe prejudice "by the spillover evidence that the joint trial constituted a miscarriage of justice"). Even where a risk of prejudice can be shown, the presumption in favor of joinder as a means of achieving judicial efficiency leads most courts to employ limiting instructions to cure prejudicial spillover. *See United States v. Rosa*, 11 F.3d 315, 341 (2d Cir.1993) ("Since there is a preference, in the federal system, for the joint trial of defendants indicted together, the district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence.").

 It is true that two separate conspiracies are charged in the present Indictment and that the arms trafficking conspiracy charged in Count One is substantially more serious than the firearms conspiracy charged in Count Three. Therefore, there may be some risk to peripheral participants in the firearms conspiracy that a jury will not distinguish between the evidence introduced as to each conspiracy. However, the conspiracies charged in Counts One and Three are not mutually exclusive and both have at their core the alleged activities of Solomonyan and Spies who, together with Colpani, DeMare, and Barseghyan, have been indicted on both counts. Thus, sound public policy reasons favoring joint trials would be undermined were the government required to try each conspiracy twice, as would be the likely result of granting defendants' motion. While some risk of prejudice exists, "differing levels of culpability and proof are inevitable in any multi-defendant trial and standing alone, are insufficient grounds for separate trials." *United States v. Nunez*, No. 00 Cr. 121(RCC), 2001 U.S. Dist. LEXIS 883, 2001 WL 91708, at *3 (S.D.N.Y. Feb. 1, 2001) (quoting *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983)). In the present case, the Court concludes that defendants are unable to show that a joint trial will prejudice them to a degree that amounts to a miscarriage of justice or to a degree that cannot be addressed through carefully crafted limiting instructions. *United States v. DeVillio*, 983 F.2d 1185 (2d Cir. 1993) (defendants not prejudiced by spillover effect where judge gave limiting instructions); *Santiago*, 174 F.Supp.2d at 23 ("[T]he federal judiciary harbors a strong presumption in favor of joinder as a mechanism for promoting judicial efficiency, and limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial.") (citation omitted).

### C. *DeMare's Motion for Severance Based on the Statements of Colpani*

 Finally, DeMare moves for severance so he may call codefendant Colpani as a witness. According to DeMare, Colpani is prepared to testify under oath that DeMare was not involved in the conspiracy and that he only sold guns legally. (DeMare Mot. (No. 9), ¶ 7.) In deciding whether to grant a defendant's motion for severance to call a codefendant, a district court should consider: (1) the sufficiency of the showing that the codefendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment. "(1) the sufficiency of the showing that the codefendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Wilson,* 11 F.3d 346, 354 (2d Cir.1993) (quoting *United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976)). As DeMare has failed to submit a declaration from Colpani affirming, under penalty of perjury, that Colpani would testify on DeMare's behalf, DeMare has not made a sufficient showing that Colpani would testify and waive his Fifth Amendment privilege. *See United States v. Lester,* No. 95 Cr. 216(AGS), 1995 U.S. Dist. LEXIS 16570, 1995 WL 656960, at *4 (S.D.N.Y. Nov. 8, 1995) (holding that a defendant did not make a sufficient showing because she did not submit a declaration from her codefendant affirming that he would testify on her behalf); *see also United States v. Bari,* 750 F.2d 1169, 1177 (2d Cir.1984) (rejecting motion for severance because codefendants' offers to testify were expressly conditioned on movant being tried last) Therefore, DeMare's motion is denied.

### CONCLUSION

Defendants' various pretrial motions are denied except that (1) Solomonyan's motion for an order directing the preservation of agents' notes is granted, and (2) a ruling on Barseghyan's motion to suppress is reserved pending a hearing.

SO ORDERED.